**Elbert C. LEACH, Plaintiff,**

v.

**BADGER NORTHLAND, INC., and M–F Badger Corporation, Defendants.**

No. 57–C–3.

United States District Court
E. D. Wisconsin.

Sept. 2, 1966.

———◆———

Arthur H. Seidel and Allan W. Leiser, Milwaukee, Wis., for plaintiff.

Glenn O. Starke, Milwaukee, Wis., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TEHAN, Chief Judge.

The above entitled matter having come on for trial to the court, and this court upon full consideration of all the evidence, pleadings, depositions and exhibits, and all the proceedings herein, finds as follows:

### FINDINGS OF FACT

1. This action was commenced on January 3, 1957 for infringement of Patent No. 2,580,306 for Silo Unloader issued December 25, 1951 on an application filed September 5, 1945 by Elbert C. Leach, Otto F. Manthie and George D. Clapp.

2. The plaintiff herein, Elbert C. Leach, a resident of Oshkosh, Wisconsin, is the sole owner of the entire right, title and interest in the patent in suit and of all claims for profits and damages by reason of past and present infringements.

3. The defendant, Badger Northland, Inc., is a Wisconsin corporation located at Kaukauna in the Eastern District of Wisconsin.

4. The defendant, M-F Badger Corporation, is a Delaware corporation located at Kaukauna, in the Eastern District of Wisconsin.

5. Silage consists primarily of corn or grasses chopped in the field into particles about a half inch in length and stored, without drying, as feed for animals. The structure in which it is stored is a silo. Figure 1 of the patent in suit shows what is apparently a typical silo—a cylindrical shaped structure with a conical roof beside which is a chute rising from an entryway at ground level. The chute encloses a portion of the structure having panels which can be removed, as silage is removed and the silage level lowered, to function as a doorway and outlet area. A ladder is normally adjacent to or a part of that opening. The sizes of silos vary, depending upon the size of farmers' herds and length of feeding seasons.

6. In order to avoid spoilage of that portion of silage exposed to air in a silo, it is desirable to remove approximately three to four inches from the top per day and to effect this removal in even layers. This daily task if performed manually by a farmer who must first climb up the silo ladder to the silage level, is the third most arduous task on a farm, being preceded only by milking and barn cleaning. The silo unloaders described in the patent and those alleged herein to infringe are intended to ease the task of unloading silage by mechanically loosening the silage on the surface of the silo, bringing it to the center, and discharging it.

7. Only Claims 6, 12, 15, 16 and 17 of the twenty-one claims of the patent in suit are here relied upon by the plaintiff and those claims fall into two groups— Claims 6 and 17 which, except for minor

changes in wording, are identical, and Claims 12, 15 and 16, the latter two of which depend upon the first.

8. The silo unloader described in the patent has four main parts, a frame, a gathering means, a pick-up means and a discharge means

9. The frame, a beam of generally triangular cross-section, extends across the inside of the silo and can be adjusted to match the diameter of the silo. It is supported by cables from the top of the silo and can be moved vertically from ground level to follow the level of the silage, but it is restrained from rotation by a shoe engaging a vertical guide rail inside the silo on one end of the beam, and another shoe which fits the silo door. A variation of the frame is shown in Figures 11 and 12 of the patent having three radially disposed arms each of which has an antifriction roller which engages the silo wall which frame is capable of limited rotation.

10. The gathering means is attached to a rotatable portion of an air duct below the frame and consists of a cutter or cutter arm which rotates in the silo, on which are mounted a series of curved blades, also referred to as blade means or cutting means, which loosen the silage and bring it to the center of the silo as the cutter rotates. Near the center of the silo and adjacent the air duct to which the cutter is attached is a pair of agitators having fingers of a length approximately even with the lower edge of the blades and driven separately from the cutter, which fluff up the silage to prepare it for pick-up.[1]

11. The pick-up and discharge means consist of a centrifugal fan in a casing attached to the non-rotatable frame, a suction pick-up duct extending from the center of this fan (being the area of greatest suction) to a point slightly above the silage floor at the center of the silo, and a discharge chute leading from the fan casing to the silo door. That portion of the pick-up duct below the frame on which the cutter is mounted, rotates but the rest of the pick-up duct, the fan and the discharge means are stationary

12. The method of picking up the silage described in the patent, is dependent upon suction principles only, and cannot function without air. As the fan blades rotate, air is moved radially outward along the blades and an area of low pressure develops in the center of the fan which must be replenished through the pick-up duct which extends to a point near the silage floor, this being the only inlet in the casing. Silage moved by the blades on the cutter to the center of the silo under the pick-up duct and there fluffed up by the agitators is picked up by suction in this stream of replenishing air, brought to the center of the fan, blown radially outward along the blades, and discharged along the chute to the silo door.

13. The silo unloaders herein alleged to infringe have a non-rotatable frame, suspended by a single cable from the top of the silo. The frame, which does not extend the entire diameter of the silo can be adjusted to fit the silo, is restrained from rotation by a shoe connecting with the silo door, and can be moved vertically from ground level to follow the silage level.

14. Near the center of the silo below the frame of the alleged infringing unloaders and supported thereby is a casing enclosing blades. The plaintiff characterizes these portions of the unloader as a fan casing and fan blades, the defendants as an impeller housing and impeller blades. The casing and blades unlike the fan casing described in the patent are at the silage level and are a part of the rotating portion of the unloader. Attached to this casing is an arm which moves horizontally over the silage floor carring a hooded auger and reverse auger the flighting on which the plaintiff refers to as blades, blade means or cutting means. The arm is located beside the casing and as the arm moves over the silage floor, the auger shaft rotates, and the flighting cuts and loosens the silage and conveys it toward the casing.

1. These agitators might also be considered a part of the pick-up means.

15. The defendants' casing has a kidney-shaped opening or inlet in the side wall next to the arm and just over the silage level. The auger and reverse auger flighting end at that opening and between them on the auger shaft, is a pair of paddles, referred to by the plaintiff as agitators and by the defendants as kicker paddles.[2]

16. Silage entering the casing opening of defendants' unloader is directed by action of the blades contained therein out of the casing through a duct, mounted on the frame and leading out the silo door.

17. At the trial the parties offered test data relating to the operation of both plaintiff's and defendants' unloaders and movies and visual demonstrations were also presented. We see no need to discuss that evidence in detail. Our review of the record convinces us that the method employed by the defendants for picking up the silage, unlike that of the plaintiff, is dependent primarily on mechanical principles. The defendants' device is capable of mechanically conveying the silage into the casing, and the blades therein can propel silage, without the assistance of suction. However, when the unloader is operated in air, that is, during normal operation, suction unquestionably does assist in drawing the silage into the casing.

18. Since the defendants' unloader is not the 100% suction device described in the patent, we must determine whether it contains the elements of the claims here in issue and has merely improved upon them by the addition of mechanical conveying elements.

19. All of the claims in issue include the element of "a vertically movable frame." Claims 6, 16 and 17 require means for restraining the frame against rotation or free rotation and Claims 12, 15 and 16 require means for lowering the frame in the silo. The defendants' un-

loader concededly has all of those elements.

20. All of the claims also include the element of a cutter or cutter arm journalled in the frame at the center of the silo for rotation in a substantially horizontal plane or for rotation relative to the frame in a substantially horizontal plane. The auger and hood on the defendants' unloader, mounted on the rotatable fan casing or impeller housing, meet these limitations of the claims.

21. The claims also require blades, blade means, or cutting means on the cutter arm for loosening the silage and working it in toward the center of the silo. The defendants have argued at least with respect to Claim 6 which uses the term "blades" that only the type of scraper blades disclosed in the patent fall within its scope and that their auger flighting does not. We are satisfied, however, that the auger flighting on defendants' unloader, which loosens silage and works it in toward the center of the silo is within each of the claims in suit and that the term "blades" as used in Claim 6 must be read to include the type of auger blade found in defendants' unloader.

22. Claims 6 and 17 require (a) a pick-up duct leading upwardly from the cutter or cutter arm at the center, or at substantially the center, of the silo above the point where the blades or cutting means leave the loosened silage, and (b) suction means associated therewith for causing the silage to be picked up in the duct for discharge laterally from the silo. Claims 12, 15 and 16 require (a) an air duct leading upwardly from the cutter adjacent the center of the silo, and (b) means associated therewith for creating an upward flow of air therein of sufficient intensity to cause the loosened silage to be sucked up into the duct for discharge laterally from the silo. The structure of defendants' unloader provides a different method for pick-up of silage and does not meet the limitations of the

2. An earlier version of the Badger unloader, also alleged to infringe, was similar to that described above except that the arm had a digger in addition to an auger and led straight to instead of beside the casing inlet. No agitators or kicker paddles appeared in this model.

claims. It lacks the essential element of a pick-up duct associated with the suction means.[3] In our opinion the omission of this element avoids infringement.

23. Claims 6 and 17 call for silage conditioning means beneath the duct separate from the blades or cutting means for agitating the loosened silage to facilitate its becoming airborne and Claim 15 requires agitators associated with the cutter and positioned immediately beneath the duct for directing loosened silage into the duct. Even if we assume that the defendants' casing is a duct those portion of the claims do not, as the plaintiff claims, read upon the kicker paddles on defendants' auger shaft which are not beneath, but beside, the casing. Also, we believe that the "2 x 2" kicker paddles propel silage into the casing, unlike the finger-like projections disclosed in the patent which fluff up and to a certain extent center but cannot propel the silage.[4]

24. Despite the fact that the defendants' unloader does utilize suction in normal operation, it is not, like the unloader described in the patent, a 100% suction device. Its mechanical conveying capacity does not, in our opinion, constitute an addition to the elements of the claims.

25. The defendants contend that the claims involved herein are invalid over the combination of Burgess Patent No. 1,233,308 and Ronning Patent No. 1,556,718, the latter patent not having been considered by the patent examiner.[5] Both patents relate to the movement of silage. Burgess describing a mechanical silo unloader and Ronning a pneumatic silo unloader or filler.

26. Burgess issued in 1917, at which time few farms were electrified and describes an unloader driven by an engine located outside of the silo. The unloader has a non-rotating frame, which can be raised or lowered in the silo, on which is mounted a rotatable disk or cutter carrying scrapers or blades which, during rotation, loosen the silage and carry it to a hopper located at the center of the silo. It includes a mechanical elevator—an endless bucket conveyor—operating in a trough from the hopper through a hole in the silo roof. The trough restrains the frame from rotation.

27. Ronning, issued in 1925, discloses a pneumatic conveyor for filling silos consisting of a fan or blower enclosed in a casing with an inlet at the center. A duct leads from below the casing to this inlet and a pair of picker wheels are located beneath the lower end of the duct to agitate the silage to be picked up in the duct by the suction of the fan. A pipe or discharge duct leads from the fan casing into the top of the silo. The conveyor was designed to be moved manually in a wagon to load the silage therein into a silo.

28. Burgess discloses a silo unloader having a vertically movable frame, means for restraining the frame against free rotation, means for lowering the frame in the silo, a cutter or cutter arm journalled in the frame for rotation or for

---

3. The plaintiff has characterized the defendants' casing as a pick-up duct or air duct as described in the claims. We cannot agree, and believe that the casing must be considered rather a part of the suction means. While there is evidence to the effect that fan blades alone can be considered a suction means, it does not appear that such a means, blades without a casing, would be capable of lifting silage, and, in our opinion, the suction means described in the patent includes both blades and casing. Although it may be true that one portion of a machine could perform the function of the two elements of the claims, we believe that the defendants' omission of the pick-up duct, which rendered their unloader capable of mechanical pick-up of silage, unlike that in the patent which operates on suction principles alone, avoids infringement. This is true despite the fact that the defendants' blades and casing are in our opinion a suction means as well as an impeller unit.

4. Defendants' first unloader, which did not employ kicker paddles, concededly did not infringe Claims 6, 15 and 17.

5. Although additional patents were cited in connection with the defense of invalidity, we find it unnecessary to discuss them.

rotation relative to the frame in a substantially horizontal plane (being the disk) and blades or blade means or cutting means on the disk for loosening silage and working it toward the center of the silo, which elements are all of the elements in the frame and gathering means described in the claim in issue except the agitators. Ronning discloses a pick-up duct or air duct, silage conditioning means or agitators beneath that duct for agitating silage to facilitate its becoming airborne or for directing silage into the duct and suction means associated with the duct for causing the silage to be picked up therein or means associated with the duct for creating an upward flow of air therein of sufficient intensity to cause the loosened silage to be picked up therein which elements describe the agitators and most of the essential elements of the pick-up and discharge means of the claims in issue. Thus, Burgess and Ronning disclose both the gathering means for moving silage to a pick-up means and a pick-up means comprising a fan with a suction inlet associated with an agitator, and these elements perform the same function in Burgess and Ronning as in the silo unloader of the plaintiff's patent. It is immaterial that Ronning's pick-up means is employed to load rather than unload a silo. The idea of employing the pick-up means of Ronning with the gathering means of Burgess, we find, was obvious to one skilled in the art and negatives invention in the combination called for in the claims in issue.

29. Admittedly, the combining of the Burgess and Ronning devices would require alterations in both. In our opinion, these minor alterations do not render the combination unfeasible or involve substantial reconstruction beyond the skill of one skilled in the art.

30. Since the patent examiner did not consider the Ronning patent, the statutory presumption of validity is impaired as to that patent, which we believe to be more pertinent than the art before the examiner. The plaintiff's argument that Rasor Patent No. 2,148,501, considered by the examiner, is at least as pertinent

a reference as Ronning would have been, is without merit. Ronning, unlike Rasor, is specifically concerned with the moving of silage and in Ronning, unlike Rasor, the complete device, including suction means, is shown.

31. The defendants have claimed that the plaintiff is estopped from enforcing Claim 12 due to misrepresentation to the patent office with respect thereto. We see no need to discuss this defense in detail but merely state that we believe it to be without merit.

32. Although silos had been in existence for many years by 1945, when the patent in suit was applied for, and although the manual unloading of silage was a difficult chore, no machine for performing this task was on the market prior to the development of the unloader described in the patent in suit. We cannot, however, accept the plaintiff's position that the patent in suit covers a pioneer invention solving a long-standing problem which others had been unable to solve. Rather, we believe that the art disclosed a solution to the problem which solution was not perfected or seriously sought because prior to 1945 (a) most farms lacked electrical power sufficient to operate a workable silo unloader, (b) low priced farm labor was available so that investment in labor-saving devices was not a great necessity, and (c) the pre-war income of most farmers was too low to permit the purchase of equipment such as silo unloaders.

CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and subject matter of this action.

2. Although Claims 6, 12, 15, 16 and 17 of the patent in suit describe a new and useful device, said claims are invalid because their subject matter as a whole would have been obvious to a person having ordinary skill in the pertinent art, in view of the Burgess and Ronning patents.

3. Even if Claims 6, 12, 15, 16 and 17 of the patent in suit are valid, the defendants have not infringed said claims.

4. Defendants are entitled to judgment of dismissal of this action.

## ORDER

It is therefore ordered that the Clerk of Court shall enter a judgment of dismissal of this action.